The third case of the day which is 21-11974, Dukes Clothing v. The Cincinnati Insurance Feel free to take your time getting settled. I see we have Mr. Colquitt here for the appellant. Mr. Litchfield for the appellee. Mr. Colquitt, whenever you're ready. No hurry. Judge, my name is Ted Colquitt. I represent Dukes Clothing along with my co-counsel Matt Glover. May it please the court, 1,248. That is the number of times that the word loss appears in a 263 page insurance policy. That averages out, may it please the court, to five times per page. The word direct appears 247 times. The word physical appears 145 times. And none of these terms, direct, physical, or loss, are defined in the policy. Now, my good friend representing Cincinnati will say that loss is defined, but to break this down, my name is Ted, in quotes, in an insurance policy. If the term appears in quotes, you go to the definition section. So, Ted, in quotes, goes to the definition section and it says Ted is Ted. So, just help me out here a little bit. So, is there or is there not a provision of the policy that says loss, in quotes, means accidental physical loss or accidental physical damage? It does. Okay. So, isn't this really about whether your claim is about physical damage of some sort? It will be. Judge, if you'll let me, I want to take up the word loss because it has been misused across the country. You know, the word loss, we go scurrying to our dictionaries. And the magistrate in our case determined that the word loss meant total ruin. I would disagree there. Total ruin in insurance is salvage. Let me ask you this just briefly. So, you said the word loss has been misused all over the country. Are you referring to, in fairness, the lots and lots and lots and lots and lots and lots of cases involving materially identical policies that have gone the other way on this question? We are swimming upstream. Let me ask you this just follow-up question. Isn't there a principle that we have recognized, rightly or wrongly, but that this court has recognized that when we are doing our eerie work and there's not a smoking gun in state law that we will assume that the state will adopt the majority position? Yes. Okay. So, I think you ought to start from there and work your way against that proposition. I beg the court's pardon. I'm going to stick with the word loss just for a second. The word loss is defined by the International Risk Management Institute as a basis of a claim for damages. We use the word loss constantly in insurance. Every letter that I've ever written to an insurance company refers to date of loss. Now, the underlying loss may be subject to interpretation, but the word loss as the basis of a claim for damages is what is used time after time after time by the insurance industry. To give you an example, we talk about loss reserve, we talk about loss experience, we talk about loss ratio. None of that is total ruin experience, total ruin ratio, or any of those things. But, Your Honor, back to the point, the state of Alabama has never defined the word physical as requiring structural alteration. What about the secondary piece of the policy that says that you'll get coverage for the actual loss of business income you sustain due to the necessary suspension of your operations during the period of restoration? And period of restoration is defined to mean the period of time begins or ends the earlier of the date when the property or the premises should be repaired, rebuilt, or replaced. That all sounds very physical, repaired, rebuilt, or replaced. Judge, I've thought a lot about that. The one thing I thought of was the period of restoration, the word restoration. And then if you go to the dictionary, and this is not defined in industry terms, if you go to the dictionary and look up the word repair, it is restore. Why do we have to go to the dictionary? Well, Judge O'Flay, I think if people are going to interpret repair, rebuild, or replace in terms of harmonizing direct physical loss with the policy, that you kind of have to. And when it says... It seems to me it's pretty clear in the policy. Well, Judge, I won't disagree with you about that. Okay. But I will disagree with you about going to the dictionary because the word repair is restore, to put it back in good working order. Now, if you took your car to a mechanic... Is that true, do you think, even when it is used in conjunction with the words rebuilt and replaced? Judge, I would say yes. Because it's rebuild, repair, or replace. But I would also point out to the court when we begin to look at this idea of restoration, that there is a coverage extension in this policy for bacteria. And the coverage of bacteria is as invisible as SARS-CoV-2 manifested in COVID-19. But there is a coverage extension for that that has its own set of remedies with respect to business income. And it speaks even in terms of tearing out property to get to the source of the bacteria. Now, our friends in Cincinnati clearly anticipate a situation where they may have to pay a loss claim for bacteria or that coverage extension would not be in the policy and they would not have charged a premium for it. So, my point is, that's not much of a leap from bacteria to COVID-19 and a separate set of remedies. And I understand, Judge, that's not in the policy. Virus is not in the policy. But my point is, they anticipated it. Can we talk about what's in the policy? You're suing for loss of business income, right? Yes, ma'am. All right. And that coverage provision says we'll pay for the actual loss of business income due to the necessary suspension of your operations during the period of restoration. You just said that. And then it says a suspension must be caused by direct loss to the property. And then it has a definition of loss. You said there's no definition of loss. That coverage part says loss means accidental physical loss or accidental physical damages. Isn't that what we're supposed to construe here? Yes, ma'am. That definition of loss that's in the policy for the coverage for loss of business income. Yes, ma'am. Am I at the right section of the policy? With respect to business income, yes, ma'am. Okay. And so loss means accidental physical loss or accidental physical damage. Right? Yes, ma'am. So we're looking at the word physical. Yes, ma'am. Not as opposed to intangible, right? I would offer to the court the body of case law that defines, not defines, but finds that physical damage can occur to property once it becomes unusable for its intended purpose. Okay. So let's follow up on that. So tell me your cases, your best cases, because this is Alabama law now. We're going to have to look at what does physical mean. We've got a whole bunch of cases on Florida and all these other state law, and we're going to have to look at physical under Alabama law. So tell me your best cases on physical loss. Do you have any cases? No, ma'am. Okay. Alabama has never gone that far to talk about structural alteration or some alteration to property in order to Has it addressed physical at all, that term in the loss definition in the business coverage? To be honest with the court, I don't know. Okay. Okay, very well. Thank you so much. You've got your rebuttal time remaining. Yes, sir. Mr. Litchfield, let's hear from you. Good morning. May it please the Court. My name is Daniel Litchfield. I represent Cincinnati Insurance Company. This case is about a coverage that is an adjunct to a property, commercial property insurance policy. The policy is directed to property coverage. It's not profits coverage. It's not coverage for costs of regulatory compliance. It is property coverage. Now, the 11th Circuit has three decisions that have found that these words or words substantially similar to these words are clear and unambiguous. And that's the Mama Jo's case, which is not in a coronavirus context, and then also the Gilreath case. Can you tell us the words that we need to construe? Yes, direct physical loss or damage to property. And actually the word accidental is in there as well, the definition of loss. So it's a direct loss, meaning accidental direct physical loss or accidental direct physical damage. That's what all the fighting has been about in this case and in literally 500 or more cases that have been reported decisions in the United States just in the last two years. Pretty remarkable. Well, I've looked at some of the policies have some variations. Some of them have a loss definition like this one. Some of them don't have a loss definition. They just have right in the coverage only direct physical accident loss. We're a little different here because we have a loss definition that you then have to put back in the coverage and you get the direct from the coverage, not from the loss definition. But I'm not sure it matters. I don't believe it does matter, Your Honor. What we're really talking about is a different placement of the same words, whether they're in the actual body of the policy defining the coverage or whether probably for ease of draftsmanship, those exact same words drop into a definition for a term that's used, you know, from time to time throughout the policy. I would analogize this to the way we all as lawyers draft documents. Okay. Can you tell me in the Alabama cases that discuss the meaning of physical loss, I know in Florida they have some cases they say material alteration to the building or structure or something like that. You read some of these cases, they cite state law and the meaning of physical. I'm not saying it matters. We can try to figure it out ourselves. But do you have any Alabama cases that you want us to look at? Judge, the Alabama state court cases that you should look at are the ones that address the general insurance law principles applied in the state of Alabama. Those are the same general insurance law principles that are applied. And that's what I saw in your brief, how we go about just construing contracts generally. But I didn't see any Alabama case you cited on what the word physical means in a policy. No, Your Honor. Okay. More importantly, there's no Alabama case addressing the words direct physical loss or damage to property. Right. And it's very important from our perspective that that be looked at as a phrase and those words be read in context. So it's not just about the word physical. That's an important part of the phrase. It's not just about the word loss, although that's an important part of the phrase. It's about how those words work together as they appear within the phrase. It's really two clauses, how the two clauses work together, a coverage clause and then a definition of a term in the coverage clause to read all four words together, direct accidental, direct physical loss. Yes, Your Honor. But you answered my question because I couldn't find one either. Were you all citing any Alabama case on this other than general law? No. It has been the situation that in a number of other states there have been predicate decisions engaging exactly this language but way before we'd ever heard of the coronavirus pandemic. And that's both from state courts as well as federal district. An example would be the Roundabout case in New York, which gets into this and has been followed by the Second Circuit routine. And so do we say the words speak for themselves and we go no further or what do we do? What's your answer? We say that this phrase is clear and unambiguous when read in context. Speaks for itself. Absolutely. As the Supreme Court indicated in King v. St. Vincent's, words are not pebbles in alien juxtaposition, meaning you don't pluck the words out of a phrase and examine them wholly independently. Every English language word, I think probably without exception, has multiple definitions in the dictionary. The way we understand which of those multiple definitions a speaker or a writer or communicator is referring to is context. Context is so important. And I think that it's been admitted, that same proposition by Dukes. At page 16 of their brief, they admit that Alabama law is that you need a rational, practical construction of the language and it must be reasonable and read as a whole. And that's all we've asked for of the various courts that have found exactly as we asked you to find. That's all that has been done by these hundreds of courts that have found to the same effect as we are asserting here. So not only do we have these 11th Circuit decisions which address this language or substantially similar language in a way that favors Cincinnati's argument here, but there are, of course, the hundreds of other cases around the country. But I'll start with the Federal Circuit Courts of Appeals. Everyone except the first and the third has come out on this issue and has come out exactly as the 11th Circuit did in Gilreath and its cases. All of them favoring the interpretation of this phrase or a substantially similar phrase as requiring some physicality, physicality of loss, physicality of damage. There was a call up a little bit earlier about the idea of, well, loss of use of property for its intended purpose. Here's the problem with that. A great question that was asked during the oral argument in the Ohio Supreme Court, which I was fortunate enough to participate in. One of the justices, Justice DeWine, asked, well, if I fog a mirror, well, it's fog, it's not good for its intended purpose. You can't see anything in it. But you wipe it off or you let the fog go away and the mirror is just fine. There's no physical loss or damage to the mirror, but for a period of time, it's not useful for the intended purpose of seeing your reflection in the mirror. And that's really the problem with going down the road of loss of an intended purpose, particularly in this sort of a situation where there is no physicality. There's no physical loss or damage to the property itself. Rather, due to government orders in this situation, we have an ability to use the property as might have been intended. Council mentioned the bacteria and mold provisions in the policy, and let me just take a minute to clarify that. There is an exclusion for losses caused by bacteria or mold, and bacteria and mold, of course, are very different physically from viruses. Among other things, mold grows and eats certain kinds of property like wood and propagates within the wood, advancing itself within the wood. That's a physical alteration or change to the property that we're not dealing with with virus, where the CDC tells us, and you can take judicial notice of this, and there's no dispute about this, that you can just wipe the virus off of a surface. If I were, and I'm not, but if I were symptomatic and positive for the coronavirus, had the disease COVID-19 caused by the virus, which is COV-2, I would be spewing droplets and aerosols right now that would be falling on the podium in front of me. And in many of the arguments that I've been privileged to do, one of the things that happens in the court, and I'm not sure it was necessary, but what they do is they give you Clorox wipes and you can wipe that podium up and everything's fine. That's not direct physical loss or damage to the podium. There's got to be a difference or a distinction between maintenance on the one and loss or damage on the other. One of my first jobs was as a dishwasher in a steakhouse, and one of the things I had to do every night was mop the floor. It never occurred to me that I was repairing or building or replacing that floor. I was mopping. It was maintenance. It's something you do. You keep it clean. So that's what Mama Jo's tells us. It's something that is in the nature of maintenance. Cleaning something off is not indicative of direct physical loss or damage to the property. Your Honor mentioned the period of restoration. I think there's some discussion of that that I'd like to weigh in on. The point is that I think as Judge Newsom observed, it's hard to square repair, rebuild, or replace with something that's utterly non-physical. That's really the point we're trying to make. Reading this policy as a whole, as we must under Alabama law, repair, rebuild, or replace has a nexus to, a correlation with, it nests with the idea of direct physical loss or damage to property. Because if you have that direct physical loss or damage, which causes a suspension of the operations, then it's the time when you repair, rebuild, or replace that tells us when your income coverage would end. It's one of the triggers for when that would end, lesser of. One can't conceive, I think, of applying the concepts of repair, rebuild, or replace in that context to the concept of direct physical loss or damage without having some physicality to direct physical loss or damage. By the way, repair, rebuild, or replace is also a fundamental core of what this policy is about. It's not the business income. It's actually what happens when your building is damaged by a windstorm or burns down in a fire. Repair, rebuild, or replace. Dukes is not looking for new tables, new ceilings, floors, walls, anything like that. They want the business income. So looking at the concept of direct physical loss or damage in context, reading those words in their context, and then following the plethora of precedents about them, one can only square all of that with repair, rebuild, or replace. Are there any Alabama decisions on repair, rebuild, or replace or period of restoration? Yes, there are, Your Honor. And what I'll do is I'll give you the rundown of the now not Alabama State cases. I'm talking about U.S. District Court cases doing an area analysis. No, I saw them. I'm looking at Alabama law. I'm not aware of any. Okay. Because the District Court cases didn't apply Alabama law either. They did. There are a number of U.S. District Court cases applying Alabama law. I meant Alabama law, the definition. Did they apply? No, none of that. Apply Alabama law in terms of general contract principles. Yes, Your Honor, that's spot on. Okay. And that's part of the challenge that we have here is not having, as they do over in Georgia with the Aflac case, not having a case directly on point pre-pandemic that one could turn to and build off of. Although Aflac is well worth reading and I think is very persuasive, it is not applying Alabama law. You've answered my question. Thank you. So I mentioned all the circuit courts. You know, it should be noted that the three state Supreme Courts have also determined that this language is clear and unambiguous and requires that there be physicality to the loss or physicality to the damage. The first was Vervine in Massachusetts from the Supreme Judicial Court, as they call it. The second was from the Virginia Supreme Court. It requires a little bit of a back story. The way things work in Virginia is if somebody has a District Court decision where they prevailed and then there's a cert petition, one of the things the Virginia Supreme Court can do is deny cert and in the denial of cert say, but we affirm the decision that you're seeking cert on. And that's what happened in the case in the Virginia Supreme Court, which was the Crescent Hotels. And then the Iowa Supreme Court in Wakanda and Jesse's embers weighed in on this as well. State courts of appeals in, again, not Alabama, but I think it's instructive that in California, Illinois, Indiana, Michigan, New York, and Ohio, state courts of appeals have found in a way that's entirely supportive is exactly what Cincinnati seeks here, applying the same sorts of general insurance law principles that Alabama courts do apply. And it's important to note that all of these appellate decisions, federal and state, as well as the three state Supreme Court decisions, are without dissent. So we're dealing with 16 states' laws determined by federal courts of appeals as well as state laws of three states as determined by their Supreme Courts and the laws of six states as determined by their respective courts of appeals, all of which find consistent with what, in a way that's consistent with what this court did in the three cases I mentioned earlier, which deal with Florida law, New York law, and Georgia law. We ask that this court follow the hundreds of precedents nationally, including those from the Oregon Circuit. And in following those precedents, the court should affirm the dismissal of this case by the U.S. District Court and should continue the now well-established two-year tradition in this country of affirming absolutely and unqualifiedly. Thank you very much. Very good. Thank you so much. Mr. Colquitt, you've got your rebuttal time remaining. May it please the Court. Cincinnati became part of the multidistrict litigation at the very beginning of the onslaught of COVID cases. And it was deemed not suitable for treatment for multidistrict litigation because companies like Cincinnati said each case must be decided according to the terms of the jurisdiction in which the contract was executed. I think it's a disingenuous argument to say one thing and then argue to this court, you do this because everybody else is doing it. Well, in fairness, I don't think he is suggesting that any of the consensus cases, if you will, are binding, technically binding on us. I don't think anybody up here thinks those cases are binding, but they are informative to the extent that they deal with state law that embodies similar principles, contract interpretation principles, and policies with similar language. I would agree. Okay. I don't disagree with that. A point and the point of contention with respect to the magistrate's opinion in this case is his finding as a matter of law that COVID-19 cannot cause physical change, property damage, either directly or indirectly. And that flies in the face of the Ashcroft statement that states, evaluating the sufficiency of a complaint is not a fact-based question of law. Now, where we have the posture of the case in 12b-6, and I would suggest to the court, the honorable magistrate did not write a 12b-6 opinion. He wrote a coverage opinion and specifically made the finding as a matter of law. I've looked back at what this court has said in the past with respect to applying rules of construction and subjectivity, and I found a dissent from Judge Joflat in 2007 in a free exercise of religious case that the subject or the sincerity requirement for a valid free exercise claim is a subjective question best left for the broader and closer scrutiny in later proceedings. I would also suggest to the court, in respect to what the magistrate has done in this case as well as in other cases across the country, 12b-6 has been weaponized. It has been eviscerated. It has been turned into a motion for summary judgment. The issues in the 12b-6 cases as to whether COVID-19 can cause physical damage are best left to experts. By a 12b-6 dismissal, not only our case, but other cases in the state of Alabama, specifically the Serendipitous case and the Southern Dental case in which physicality was found, it becomes an issue of expert testimony. And closing out, with respect to Mama Jo's, I like Mama Jo's, that opinion, because that is a Rule 56 expert opinion that was a daubered opinion at the trial court level, and all the court did in that case, and I know Judge Newsom and Judge Joe Flatt, y'all sat on Mama Jo's, was apply law from other jurisdictions. And I would suggest to you that dust and debris can't kill you. COVID-19 can. Now, assent management, I respectfully, to the court, I disagree because I think it misapplies the principles of an all-risk policy. And in respect to an all-risk policy, once the insured demonstrates a cause of loss, they're not required to demonstrate the cause of the cause. Demonstrate the cause of loss, the burden shifts to the insurer to show an exclusion or to show misconduct on the part of the insured. And when we look at, and I realize my time is gone, with the definition of the word loss being the basis of a claim for damages, once the insured makes a claim or a basis of a claim for damages, then that burden shifts back to the insurer to demonstrate the exclusion, no virus exclusion in this case, or misconduct on part of the insured. In closing, these are questions for science. These are questions for experts. These are not questions for federal judges to decide what the word loss means and then to go up and down, up and down across the country. The 12B6 opinion in this case must be remanded in our judgment, and respectfully to the court, because of the finding as a matter of law. That is not the law in the state of Alabama. He's made it the law in the state of Alabama. And the last thing is, and I will be quiet, this court, when these terms aren't defined in a policy, with direct is not defined, physicality is not defined, this court is going to find itself calling balls and strikes. Okay, very well. Thank you so much. That's what we aim to do. That case is submitted, and I will move to the fourth.